UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michael Paul Shelton, | Case No. 16-cv-466 (JRT/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| McLeod County, McLeod County Jail, Sheriff Scott Rehmann, John Doe, Jane Does #1–2, and Various Unknown Corrections Officers, Doctors, and Nurses, | |
| Defendants. | |

---

STEVEN E. RAU, United States Magistrate Judge

The matter comes before the undersigned on Defendants McLeod County, McLeod County Jail, Sheriff Scott Rehmann, John Doe, Jane Does #1–2, and Various Unknown Corrections Officers, Doctors, and Nurses' (collectively, "Defendants") Motion for Dismissal and/or Summary Judgment ("Dispositive Motion") [Doc. No. 33]. This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1 for a Report and Recommendation. *See* (Order of Reference) [Doc. No. 45]. For the reasons set forth below, the Court recommends that Defendants' Dispositive Motion be granted and that this case be dismissed.

I.   **BACKGROUND**

Shelton's Amended Complaint asserts that Defendants violated his Eighth Amendment rights.[1] (Am. Compl. at 8–9). The central premise of Shelton's Amended Complaint is that

---

[1]   In addition to the Complaint, Shelton requested to proceed in this case without paying fees or costs. (Appl. to Proceed in District Ct. Without Prepaying Fees or Costs, "Appl.") [Doc. No. 2]. His Application was not granted at that time because Shelton's Complaint did not

McLeod County jail staff ignored Shelton's medical records in their possession and failed to prescribe sufficient doses of Xanax.[2] Specifically, Shelton alleges that he experienced cruel and unusual punishment relating to Defendants' medical indifference when they—on four separate occasions in February 2014, August 2014, October 2014, and December 2014—denied him Xanax for his Tourette's Syndrome, causing Shelton to undergo rapid withdrawal symptoms.[3] (*Id.* ¶¶ 28–36). As a result, Shelton alleges that he experienced "severe panic attacks, seizures, auditory hallucinations, visual hallucinations, and extreme anxiety." (*Id.* ¶ 35). Furthermore, Shelton alleges that his seizures caused "additional physical injuries, such as a broken foot." (*Id.*). Shelton seeks an award of undisclosed "compensatory and punitive damages for his severe emotional and mental distress, embarrassment, humiliation, pain and suffering," in addition to "costs, disbursements, and attorneys' fees incurred in bringing and prosecuting this action." (*Id.* at 9).

---

comport with the pleading requirements espoused in the Federal Rules of Civil Procedure. *See* (Order Dated Apr. 19, 2016, "Apr. Order") [Doc. No. 3]. The Court instructed Shelton to file an amended complaint that cured the identified deficiencies. (*Id.* at 5). The Court also referred Shelton to the Federal Bar Association's ("FBA") Pro Se Project to ascertain whether they would help with Shelton's case. *See* (Letter Dated Apr. 19, 2016) [Doc. No. 4]. With the help of counsel, Shelton filed his Amended Complaint [Doc. No. 7] and his Application was granted, making the Amended Complaint the operative pleading. *See* (Order Dated July 5, 2016) [Doc. No. 9].

[2]    Alprazolam is the generic form of Xanax. *See Alprazolam (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/alprazolam-oral-route/description/drg-20061040 (last updated Mar. 1, 2017). The parties use these terms interchangeably, as does the Court.

[3]    It is unclear from the Amended Complaint whether "these periods of incarceration" deal with only the probation violations in August 2014, October 2014, and December 2014 or also include the initial incarceration in February 2014. *See* (Am. Compl. ¶¶ 28–29). Giving Shelton the benefit of the doubt, the Court assumes Shelton intended to asserted Eight Amendment violations for all periods of incarcerations. Defendants are not prejudiced by this conclusion because they addressed Shelton's Amended Complaint under similar assumptions. *See generally* (Defs.' Mem. of Law in Supp. of Dismissal and/or Summ. J., "Defs.' Mem. in Supp.") (addressing each of Shelton's four periods of incarceration).

After the close of discovery, Shelton's counsel moved to withdraw. *See* (Mot., "First Mot. to Withdraw") [Doc. No. 29]; *see also* (Pretrial Scheduling Order) [Doc. No. 28 at 1] (stating "[a]ll fact discovery [of] any kind shall be commenced in time to be completed by" August 1, 2017). The Court deferred ruling on the First Motion to Withdraw because Shelton's counsel had provided insufficient information under the Local Rules. *See* (Order Dated Oct. 5, 2017) [Doc. No. 30]. Soon thereafter, Defendants filed their Dispositive Motion and Shelton's counsel filed a Notice of Motion and Motion to Withdraw from Representation ("Second Motion to Withdraw") [Doc. No. 38]. The Court stayed the briefing of the Defendants' Dispositive Motion pending resolution of the Second Motion to Withdraw. *See* (Text Only Order Dated Nov. 22, 2017) [Doc. No. 46].

After a hearing before the undersigned, the Second Motion to Withdraw was granted. *See* (Minute Entry Dated Jan. 8, 2018) [Doc. No. 47]; (Text Only Order Dated Jan. 8, 2018) [Doc. No. 48]. Later, the Court also issued a briefing schedule for Defendants' Dispositive Motion. (Text Only Order Dated Jan. 19, 2018) [Doc. No. 49] (establishing that Shelton must respond to Defendants' Dispositive Motion on or before February 19, 2018). Shelton's Motion for Appointment of Counsel ("Motion to Appoint Counsel") [Doc. No. 50] followed. The Court denied Shelton's Motion to Appoint Counsel. *See* (Order Dated Jan. 29, 2018) [Doc. No. 51]. In particular, the Court stated that it

> is sensitive to Shelton's apprehension regarding his *pro se* status in this matter. That being said, the Court concludes that appointment of counsel is not warranted under the circumstances. Specifically, the factors espoused in [*Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006)] do not suggest that the Court or Shelton "will substantially benefit from the appointment of counsel." *See Plummer*[ *v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996)]. Critically, Shelton received the benefit of counsel in crafting his Amended Complaint and throughout the discovery process. Thus, Shelton cannot show continued benefit of representation with respect to his ability to investigate the facts. Discovery is

3

>closed and the record is what the record will be, regardless of whether the Court appoints new counsel in this matter.

(*Id.* at 4). Shelton did not file a timely response to the Defendants' Dispositive Motion. Instead, almost two months after the time in which he could timely respond, Shelton submitted a collection of exhibits that show medical expenses for various drugs including Xanax, Nefazodone, Lorazepam, and Diazepam. (Exs., "Shelton's Exs.") [Doc. No. 52]. The only explanation that accompanied the exhibits was included in a cover letter, in which Shelton asserted "[t]hese are my prescription records. Please submit this as evidence in my case. A copy has already been sent to the defending attorney." (Cover Letter) [Doc. No. 52-1]. The exhibits show that Shelton had a gap in his Xanax prescription from July 24, 2014, until November 24, 2014. *See* (Shelton's Exs. at 2).[4]

Defendants assert that Shelton's Amended Complaint should be dismissed for failure to state a claim for a number of reasons: (1) Shelton's medical history suggests that he did not have a serious medical need for Xanax; (2) the unnamed parties have not been served and must be dismissed; (3) McLeod County Jail is not subject to suit; and (4) Shelton did not assert any individual capacity claims—and because there is no individual liability—Shelton cannot bring claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Defs.' Mem. in Supp. at 12–19). With respect to summary judgment, Defendants argue that they were not indifferent to Shelton's medical needs. *See* (*id.* at 12–13, 21–28). To that end, Defendants assert that they gave him medication as instructed by a physician to help Shelton with medically identifiable concerns and that treatment was based on the physician's medical discretion. (*Id.* at 23–26). In support of their Dispositive Motion, Defendants filed twenty-four exhibits, including probation reports, some of Shelton's medical records, and medical administrations records for

---

[4] When reference all exhibits, CM/ECF pagination is used.

Shelton while at the McLeod County Jail. *See* (Exs. 1–24, Attached to Aff. of Jason M. Hiveley) [Doc. Nos. 36-1 to 36-24].

The probation reports show that prior to each of the alleged incidents, Shelton was incarcerated for alcohol-related incidents. *See* (Ex. 1 at 3) (describing the various violations including unlawful blood alcohol levels and failure to complete a halfway house protocol). The medical records also suggest medical professionals were concerned with Shelton's prescription drug use. *See* (Ex. 3) (notes from an August 2007 appointment where the physician stated Shelton "clearly uses meds without discretion or regard to MD's orders"). The medical records further demonstrate that medical professions were concerned with Shelton's mixing of Xanax with alcohol. *See, e.g.*, (Ex. 24) (stating "of significant concern, is [Shelton's] admission of drinking alcohol in combination with his Xanax" and that Shelton rebuked attempts at discussing "how dangerous this is"). The medical records also evidence situations in which Shelton told physicians that he "do[es]n't go through withdrawal from [X]anax" and that seizures he has had in the past could not be attributable to Xanax withdrawal. *See* (Ex. 5 at 2). *But see* (Ex. 19 at 4) (stating that Shelton has a history of "Xanax/benzodiazepine withdrawal seizures"). Finally, the record shows that Shelton declined Chlordiazepoxide during his February 2014 incarceration, which "may also be used to treat symptoms of alcohol withdrawal." *See Chlordiazepoxide Hydrochloride (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/chlordiazepoxide-hydrochloride-oral-route/description/drg-20072246 (last updated Mar. 1, 2017); *see also* (Exs. 15–17) (medical inmate notes and refusal of treatment release forms).

During his incarnation in February of 2014, Shelton was provided with step-down doses of Xanax. *See* (Ex. 10) (Shelton's medication record while incarcerated in February 2014); (Ex.

5

11) (Shelton's health complaint form complaining of reduced Xanax doses); *see also* (Defs.' Mem. in Supp. at 6–7) (describing the manner in which Shelton was administered Xanax during his February 2014 incarceration). Prior to his incarceration in August of 2014, Shelton attempted suicide by overdosing on Xanax and consuming alcohol. *See* (Ex. 19 at 2–3). Consequently, given Shelton's medical history, medical professionals apparently prescribed Thorazine (aka "Chlorpromazine"), discontinuing Shelton's Xanax prescription. *See* (Ex. 20 at 2); *see also* (Defs.' Mem. in Supp. at 8) (Shelton's Exs. at 2) (showing no Xanax prescription from July 24, 2014 until November 24, 2014). With respect to his time in the McLeod County Jail in August of 2014, the medication administration records demonstrate that he was not given Xanax during his August stay, but was given Thorazine. *See* (Ex. 21 at 2–5). During his incarceration in October of 2014, he was not provided Xanax. *See* (Ex. 22 at 2). Shelton was also not provided with Xanax during his December 2014 incarceration, although he appears to have obtained a new prescription for it. *See* (Ex. 23 at 2); (Shelton's Exs. at 2).

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(6)

#### 1. Legal Standard

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

#### 2. Analysis

Shelton's claims against the unnamed defendants should be dismissed. Under the Federal Rules of Civil Procedure, "the court . . . must dismiss the action without prejudice" against

defendants that were "not served within 90 days after the complaint is filed," unless Shelton can show good cause. Fed. R. Civ. P. 4(m). Shelton filed his Amended Complaint on June 21, 2016. (Am. Compl.). Discovery closed on August 1, 2017, and service was never perfected. *See* (Pretrial Scheduling Order). Shelton has not argued that good cause exists for this failure to serve. The Court can think of no reasons that justify good cause. Here, "[d]efects in service of process are jurisdictional in nature. If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Rasor v. Fed. Bureau of Prisons*, No. 05-cv-981 (DWF/FLN), 2006 WL 1174221, at *2 (D. Minn. May 1, 2006) (Noel, Mag. J., as adopted by Frank, J.) (citing *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993)). As a result, the Court recommends that Defendants' motion to dismiss be granted in this regard and Shelton's claims against the unnamed Defendants be dismissed without prejudice.

Because Defendants' remaining assertions under their motion to dismiss either address matters outside the pleadings or relate to the merits of Shelton's claims, the Court will address Defendants' arguments under the summary judgment standard. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[5]

### B.   Summary Judgment Under Rule 56

Defendants have established there is no genuine issue of material fact and they are entitled to judgment as a matter of law under controlling Eighth Amendment jurisprudence. Relatedly, Shelton has failed to submit evidence to suggest a genuine issue of material fact. As a

---

[5]   Because Defendants sought dismissal under Rule 12(b)(6) and summary judgment under Rule 56 in their Dispositive Motion, the Court need not determine whether converting a motion to dismiss into one for summary judgment is appropriate. *See* (Dispositive Mot.).

result, the Court recommends that Shelton's claims against the remaining Defendants be dismissed with prejudice.

### 1. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted). "[A] dispute about a material fact is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988). The court views the evidence and makes all reasonable inferences in favor of the nonmoving party. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005).

To support its argument, the moving party must cite to record materials or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011).

### 2. Analysis

The Eighth Amendment requires "prison officials to provide inmates with medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct

amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Id.* at 1237–38 (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiff[] must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

*Id.* at 1239 (citations omitted). "This is an onerous standard." *Martinson v. Leason*, 22 F. Supp. 3d 952, 960 (D. Minn. 2014) (Kyle, J.) (internal quotation marks omitted). "The plaintiff 'must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not . . . rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct.'" *Id.* (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008)). Under this standard, the Court concludes that Shelton has provided insufficient evidence to establish a genuine dispute as to any material fact. Furthermore, because Defendants have demonstrated that they were not indifferent to Shelton's medical needs, Shelton cannot sustain his Eighth Amendment claim and Defendants are entitled to judgment as a matter of law. The Court addresses each prong of the Eighth Amendment analysis below.

### a.     Objectively Serious Medical Needs

Shelton asserts he has a "serious medical need for the drug [Xanax]." (Am. Compl. ¶ 38). A medical condition is "objectively serious" for Eighth Amendment purposes when the need "has been diagnosed by a physician as requiring treatment, or is one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal quotation marks omitted). Here, there is conduct that must be assessed related to four separate incarcerations during: February 2014; August 2014;

9

October 2014; and December 2014. *See* (Am. Compl. ¶¶ 28–36). The record shows that Shelton's claims regarding Defendants' failure to provide Xanax during the August 2014 and October 2014 incarcerations are meritless because Shelton did not have a Xanax prescription during the relevant period. *See* (Ex. 20 at 2); *see also* (Defs.' Mem. in Supp. at 8) (Shelton's Exs. at 2) (showing no Xanax prescription from July 24, 2014, until November 24, 2014). As a result, there is nothing to suggest during the August and October incarcerations that Shelton had a condition for which Xanax was a medically diagnosed remedy. That is, Shelton did not have a prescription for Xanax so his demand was not medically supported. Indeed, many physicians questioned his Xanax use generally and Shelton's Xanax prescription was revoked in part for this reason. (Ex. 2, "Shelton Dep." at 14) (Shelton testifying that "every doctor [he] met wanted to take [him] off of [Xanax]"); (Ex. 3); (Ex. 19); (Ex. 20). Furthermore, there is no showing during any of Shelton's incarcerations that his condition was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *See Camberos*, 73 F.3d at 176 (internal quotation marks omitted).

The only question remaining is whether Shelton had an objectively serious medical need related to his Xanax use during the February 2014 and December 2014 incarcerations—because that is the only time periods in which he had a prescription for the medication. *See* (Shelton's Exs. at 1–2). Nothing in the record suggests that to be the case. Critically, most physicians questioned the medical suitability of Xanax to treat Shelton's condition. *See, e.g.*, (Shelton Dep. at 14); (Ex. 3); (Ex. 19); (Ex. 20). Importantly, Shelton does not provide any evidence to refute this conclusion and his own testimony supports a finding that Xanax was not medically indicated. (Shelton Dep. at 14). In fact, on the basis of his medical records and past medical care at the McLeod County Jail, his seizures were diagnosed and treated as the result of alcohol

withdrawal and not related to Xanax use. *See, e.g.*, (Ex. 5 at 2) (Shelton telling physicians he does not "go through withdrawal from [X]anax"); (Ex. 6) (alcohol withdrawal protocol for Shelton's February 2014 incarceration). Furthermore, during Shelton's December 2014 incarceration, Shelton had no Xanax pills remaining approximately three weeks into his month-long prescription for Xanax. *See* (Ex. 23) (showing Shelton had no Xanax pills from his November 24, 2014, prescription on December 18, 2014). These factors tend to show that Shelton has no objectively serious medical need for Xanax. On this basis alone, the Court could conclude that Shelton failed to demonstrate an Eighth Amendment violation and could recommend summary judgment in favor of Defendants. *Cf. Dulany*, 132 F.3d at 1237.

Nevertheless, assuming for the purposes of this analysis that Shelton demonstrated an objectively serious medical need for Xanax during his February 2014 and December 2014 incarcerations, there is nothing to suggest that Defendants deliberately disregarded this need.

### b.     Deliberate Disregard

Unlike other cases, this is not a situation in which prison officials substituted their judgment for that of a physician's. *See Meloy v. Bachmeier,* 302 F.3d 845, 848–49 (8th Cir. 2002) (holding prison officials cannot substitute their judgment for a medical professional's prescription). Instead, the record demonstrates that physicians responsible for Shelton's care while incarcerated prescribed a treatment protocol that did not include Xanax or included step-down doses of the same in an attempt to ween Shelton off the drug. *See, e.g.*, (Ex. 10); (Ex. 23). Shelton, however, has "no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany*, 132 F.3d at 1239. From the record before the Court, Defendants were "exercis[ing] their independent medical judgment." *See id.* As described above related to an objectively serious

11

medical need, Shelton's medical history demonstrates: (1) that various physicians questioned Xanax's suitability to address Shelton's condition; (2) Shelton has a history of Xanax abuse; (3) and yet Shelton routinely resisted efforts to move his treatment away from Xanax. *See, e.g.*, (Shelton Dep. at 14) (Shelton testifying that "every doctor [he] met wanted to take [him] off of [Xanax]"); (*id.* at 71) (Shelton testifying that [m]ost doctors don't agree with treating [him] with Xanax"); (Ex. 3); (Ex. 19); (Ex. 20); (Ex. 24) (a 2015 assessment stating he "would kill himself rather than enter[] inpatient treatment" for chemical dependency/Xanax abuse). To that end, the record shows that the physicians at McLeod County Jail merely exercised their independent medical discretion. For example, in February 2014, when Shelton still had Xanax pills available to him from his monthly prescription, Defendants put Shelton on a step-down protocol in an attempt to ween him off of the drug. *See* (Ex. 10). As another example, in December 2014, when Shelton had run out of his monthly prescription after approximately three weeks, physicians did not give him additional Xanax while incarcerated. *See* (Ex. 23) (Dr. Scheidt stating that Xanax—for which Shelton had a prescription, but had no pills—was not approved for use).

Furthermore, and relatedly, during Shelton's February 2014 and December 2014 incarcerations, Defendants were consistent in the manner in which they addressed Shelton's treatment under their care. That is, they attempted to ween him off of or otherwise denied him medication that was not appropriate to consume with alcohol. *See* (Ex. 1) (stating Shelton was incarcerated in February 2014 with a .27% blood alcohol content and was incarcerated in December 2014 for violations of his probation with a .075% blood alcohol content); (Ex. 6) (Shelton's medically prescribed alcohol withdrawal protocol where it states Shelton presented with a .286% blood alcohol content in February 2014); (Ex. 10) (Shelton's medical notes from his February 2014 incarceration where Dr. Scheidt ordered his Xanax consumption to be

tapered); (Ex. 23) (Dr. Scheidt denying the use of zolpidem tartrate and Xanax).[6] Stated differently, Defendants have shown that Shelton's treatment was tailored to the condition with which he presented while incarcerated—alcohol use/abuse. Had Defendants provided Shelton with Xanax and Ambien at the same dosage levels he typically consumed them—in light of his high blood alcohol content at the inception of his February 2014 or December 2014 incarcerations—they would have done so against the medical consensus that these drugs should not be taken in combination.

Giving Shelton every reasonable beneficial inference—at best—Shelton has established that he disagrees with the treatment decisions of his medical professionals, but this is insufficient to establish a genuine issue of material fact under the Eighth Amendment's prohibition against inadequate medical care. That is, Shelton "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii*, 512 F.3d at 499 (citations omitted). Shelton only provided the Court with his prescription records that demonstrate he had a prescription for Xanax during the February 2014 and December 2014 incarcerations. *See* (Shelton's Exs. at 1–2). Nonetheless, whether Shelton had a prescription does not create a fact dispute as to the ultimate question of whether Defendants were medically indifferent to his medical needs. In short,

---

[6] Both zolpidem tartrate, commonly branded as the sleeping aid Ambien, and Xanax are to be avoided when consuming alcohol. *See Zolpidem (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/zolpidem-oral-route/proper-use/drg-20061195 ("Do not take this medicine if you have drank alcohol the same evening.") (last updated Mar. 1 2017); *Alprazolam (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/alprazolam-oral-route/precautions/drg-20061040 (stating alcohol use in combination with Xanax may cause "confusion, worsening of depression, hallucinations (seeing, hearing, or feeling things that are not there), suicidal thoughts, and unusual excitement, nervousness, or irritability") (last updated Mar. 1, 2017).

Shelton failed to substantiate his deliberate indifference claims, and everything that Defendants provided suggests their treatment decisions were reasonable under the circumstances.

Ultimately, given the record evidence before the Court, no reasonable jury could conclude that Shelton's Eighth Amendment rights were violated. *Cf. White*, 849 F.2d at 325. As a result, the Court recommends that Defendants' Dispositive Motion be granted in this respect and Shelton's Eighth Amendment claims against the named Defendants be dismissed with prejudice.

### III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants McLeod County, McLeod County Jail, Sheriff Scott Rehmann, John Doe, Jane Does #1–2, and Various Unknown Corrections Officers, Doctors, and Nurses' Motion for Dismissal and/or Summary Judgment [Doc. No. 33] be **GRANTED** as described herein;

2. Claims against unnamed Defendants John Doe, Jane Does #1–2, and Various Unknown Corrections Officers, Doctors, and Nurses be **DISMISSED without prejudice**;

3. Claims against the remaining Defendants be **DISMISSED with prejudice**; and

4. This case be **DISMISSED**.

Dated: May 1, 2018

                                                   *s/Steven E. Rau*
                                                   STEVEN E. RAU
                                                   United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).